[No. 19682. Department Two. August 24, 1926.]

THE STATE OF WASHINGTON, *Appellant,* v. HARTFORD ACCIDENT AND INDEMNITY COMPANY, *Respondent.*[1]

[1] PRINCIPAL AND SURETY (34)—DISCHARGE OF SURETY—RELEASE OF OTHER SECURITIES. Where the state holds collateral security in addition to indemnity bonds, securing the state deposits with a state depositary, its duty to first apply the collateral before resorting to the indemnity bonds is not excused where the bond made the surety liable to the extent the "penalty of this bond bears to the total amount of other surety bonds or seventy-five per cent of the total amount of the collateral securities."

[2] SAME (34). In such a case, the state's right to collect the full amount of the indemnity bonds cannot be based upon a clause in the bond which provided that the state may hold the surety for its proportionate liability without first having recourse to the collateral, where it appears that the state did not proceed to collect from the sureties on the bonds, but resorted to the collateral it held, and sold the same and disposed of the proceeds, part of which were turned over to the receiver of the principal; and it is liable to be charged to the extent it failed to apply the proceeds to its debt.

[1]Reported in 248 Pac. 432.

Appeal from a judgment of the superior court for King county, Douglas, J., entered October 13, 1925, upon findings in favor of the defendant in an action on an indemnity bond, tried to the court. Affirmed.

*The Attorney General* and *B. B. Adams, Assistant,* for appellant.

*Roberts & Skeel,* for respondent.

MAIN, J.—This action was brought to recover the balance claimed to be due upon a surety bond. A trial to the court without a jury resulted in findings of fact, conclusions of law and a judgment denying recovery, from which the state, the plaintiff, appeals.

The facts are not in dispute and may be summarized as follows: The First National Bank of Clarkston on February 8, 1924, was a state depositary to the extent of $15,000, and on that date became insolvent. The state was secured by liberty bonds of the par value of $7,000, which the bank had deposited as collateral and had given to the state a power of attorney which authorized their sale. The state was also secured by two bonds, each in the penal sum of $5,000, one of which was given by the respondent. The collateral was deposited by the bank prior to the time of the execution of the bond by the respondent upon which this action is based. After the failure of the bank, the state, under the power of attorney which authorized it so to do, sold the liberty bonds for the sum of $7,040.60 and applied $5,013.54 thereof to the discharge of the insolvent bank's obligation, and returned $1,777.06 to the receiver of the bank and retained as a contingent fund the sum of $250, making a total of $2,027.06 of the proceeds of the bonds which was not applied to the indebtedness of the bank. The treasurer then called upon the respondent for the sum covered by its bond and

the respondent responded by paying $4,000 into the state treasury. It denied any further liability. The result was the present action.

[1] The question is, whether it was the duty of the state treasurer to apply the entire proceeds of the liberty bonds in liquidation of the insolvent bank's indebtedness before it resorted to the surety bonds. If it was his duty so to do, then the amount paid to the respondent covered its liability. In the absence of anything in the statute or the bond to the contrary, it was the duty of the treasurer first to apply the entire proceeds of the collateral to the discharge of the bank's indebtedness and then resort to the bonds for the balance, and, if this is not done, the surety is, to the extent that the creditor failed to apply the proceeds of the collateral, discharged from liability. Brandt, Suretyship and Guaranty (3rd ed.), § 480, vol. 1, states the law as follows:

"If the creditor has a surety for the debt, and also has a lien on property of the principal for the security of the same debt, and he relinquishes such lien, or by his act such lien is rendered unavailable for the payment of the debt, the surety is, to the extent of the value of the lien thus lost, discharged from liability. This rule does not depend upon contract between the surety and creditor, but results from equitable principles inherent in the relation of principal and surety. It is equitable that the property of the principal, pledged for the payment of the debt, should be applied to that purpose, and it is grossly inequitable that in such case the property should be diverted from that purpose, and the debt thrown upon a mere surety. Upon obtaining such a lien the creditor becomes a trustee for all parties concerned, and is bound to apply the property to the purposes of the trust. . . ."

It is unnecessary here to assemble the cases which support the text writer, because there is no controversy over the general proposition of law there stated.

If the state was justified in not applying the entire proceeds of the collateral to the payment of the indebtedness, it is by virtue of par. 3 of the bond which is as follows:

"The above-named surety shall be liable hereunder for such proportion of the monies deposited with said principal by the state of Washington, and payment of which is refused by said principal upon demand of the treasurer of the state of Washington as provided in the condition of this bond as the penalty of this bond bears to the total amount of other surety bonds or seventy-five per centum of the total amount of collateral securities furnished by the above-named principal to the state of Washington or to the treasurer thereof as security and pledge for the payment to the said state of Washington or the treasurer thereof all monies deposited with said principal under and in conformity to the said laws of the state of Washington; Provided, That in such an event the state may hold the surety for its proportionate liability hereunder without first having recourse to collateral securities deposited by the principal: Provided, Further, That if such other surety bonds or collateral securities are insufficient for any reason to fully make, together with the aforesaid proportion under this bond, the full amount of principal and interest demanded and refused and interest thereafter accruing to time of actual payment to the treasurer of the state of Washington, then and in that event the surety hereunder shall be liable to the state of Washington to the full amount of loss sustained by reason of such insufficiency."

It will be observed that the surety is liable to the extent the "penalty of this bond bears to the total amount of other surety bonds or" [not and] "seventy-five per centum of the total amount of collateral securities furnished by the above-named principal to the State of Washington or to the treasurer thereof." The state's argument appears to be rested on the assumption that the word "or" should be read "and," but if

this should be done a different contract would be made than the parties made for themselves. It must be admitted that the clause following the word "or" in the bond is somewhat mystifying and its real meaning is difficult to determine. There is, however, nothing in the bond which would indicate that the general rule of law above mentioned is not to apply or that the surety has in any way consented that the state might release a part of the proceeds of the collateral.

[2] Attention is called to that clause in the bond which provides that the state may hold the surety for its proportionate liability without first having recourse to the collateral deposit by the principal. That clause can have no application here because the state did not proceed to collect from the sureties without resorting to the collateral. It sold the liberty bonds and disposed of the proceeds. We shall not attempt here to determine under what state of facts the clause in the bond after the word "or" would cover. There being no clause in the bond which authorized the state to return a part of the proceeds of the collateral to the receiver of the insolvent bank it follows that the sureties were discharged to the extent that the state treasurer failed to apply the proceeds of the liberty bonds upon the indebtedness of the insolvent bank.

The case of *Gregg v. Hinkle*, 29 N. M. 576, 224 Pac. 1025, construes a statute of New Mexico which is essentially different in its terms from the provisions of the bond in this case and Rem. Comp. Stat., § 5549 [P. C. § 6724], in pursuance of which the bond was given.

The judgment will be affirmed.

TOLMAN, C. J.. MITCHELL, MACKINTOSH, and PARKER, JJ., concur.