[No. 28685. Department One. August 13, 1942.]

*In the Matter of the Estate of* MARY HILBERT, *Deceased.*
GLADYS OLSON, *Appellant,* v. HARLEY SIMONS,
*Respondent.*[1]

*E. A. Cornelius,* for appellant.

*A. O. Colburn,* for respondent.

MAIN, J.—The ultimate question for decision in this case is whether a contract made between a young man and an aged woman, by which he was to take care of her and operate her farm during her lifetime and re-

[1]Reported in 128 P. (2d) 647.

ceive, by will, all of her property at her death, was valid and performed.

Algernon Hilbert and Mary Hilbert owned, and resided on, a farm near Medical Lake, in Spokane county. Harley Simons, a young man who was slightly subnormal, will be referred to as Harley. He was employed by Mr. Hilbert, in about the month of March, 1933, to do the work upon the farm and receive therefor thirty dollars per month, together with his board and lodging. He continued in this employment until the death of Mr. Hilbert, which occurred on September 7, 1935.

Harry Olson and Gladys Olson, his wife, lived in the same vicinity. When Mr. Hilbert died, Mrs. Olson immediately came to the Hilbert home, and soon after Mr. Olson came. They remained with Mrs. Hilbert, and shortly afterwards Harley was discharged, and the Olsons continued to reside with Mrs. Hilbert for about a year, when she sent for Harley. He came about October 23, 1936, and on the 27th day of that month they went to Spokane to the office of A. O. Colburn, who was a practicing lawyer in that city. At this time, Mrs. Hilbert stated to Mr. Colburn that she had made an agreement with Harley by which he was to do the work upon the farm, take care of the house, and look after her during her lifetime, and that she wanted a will drawn leaving all of her property to Harley at her death. Harley was to work the farm to produce an income sufficient for them to live on. The farm not being sufficient to produce enough to make a living for both of them, Harley worked for neighboring farmers for compensation to help out with the expenses. He was not to receive any other compensation. The farm consisted of about eighty-three acres, and approximately one-half of it was in cultivation. After the will was drawn, Mr. Colburn wrote a letter to the Olsons

directing them to leave Mrs. Hilbert's home, which they did, and continued to reside in the same vicinity.

Harley continued in accordance with the contract until October 7, 1940, when he was again discharged, and the Olsons were reinstated in the home of Mrs. Hilbert. About ten months before he was discharged this time, Harley had married a woman who had been previously married and had one small child, and from then on Harley and his wife and the child continued to live in the home of Mrs. Hilbert, who, apparently, made no objection to the wife and child coming into her home.

Shortly after the Olsons came to Mrs. Hilbert's home the first time, she made a will disposing of all of her property to Mrs. Olson. When they returned the second time, she again made a like will. The day that Harley was discharged the second time, he had been at work for a neighboring farmer, and, when he returned, a lawyer from Spokane met him, apparently outside of the house, and told him that he would have to leave. He said, in reply to that, that he wanted to see Mrs. Hilbert. Thereupon, they went into the house, and Harley asked Mrs. Hilbert if she wanted him to leave, and she said something to the effect that "you got to" or "I want you to." At this time, there were in the house, in addition to the lawyer and Harley, the Olsons and one or two other persons. Mrs. Hilbert died December 27, 1940, at the age of eighty-six years. During the later years of her life, she suffered with rheumatism and gradually failed in health and strength, and, as one witness testified, she became "childish" and was easily influenced by any person in whom she had confidence.

The present action was instituted to set aside this second will to Mrs. Olson and enforce the contract which Mrs. Hilbert had made with Harley.

Upon the trial, a considerable number of friends and neighbors of Mrs. Hilbert testified, some to the effect that the farm was not properly looked after, that the house was not kept clean, and that Mrs. Hilbert was neglected; and some of these friends and neighbors testified to the opposite. It would serve no useful purpose to review in detail the testimony of all of these witnesses. It is doubtless true that, after Harley was married, he depended upon his wife, to a considerable extent, to look after Mrs. Hilbert and take care of the house. She, however, was, apparently, a woman with little liking for that kind of work and preferred to work outdoors and assist her husband with the farm work, a portion of the time at least.

The trial court entered a judgment sustaining the contract and setting aside the second will, from which the executrix of that will appealed.

Mrs. Hilbert's total estate, after paying the necessary obligations, was worth about two thousand dollars. Mr. Colburn, who drew the will for Mrs. Hilbert, prosecuted this action for Harley, and the first question is whether his testimony should have been received. It was objected to on the ground that he was an interested party, and that, under Rem. Rev. Stat., § 1211 [P. C. § 7722], he was not competent to testify, because Mrs. Olson was defending as the executrix of the will of Mrs. Hilbert. Mr. Colburn testified that he had no contract with Harley with reference to the amount of compensation that he was to receive; that he expected to charge a reasonable fee, and that, if he was successful in the litigation, he would expect a larger fee than if he failed; but that his fee, whatever it was, was not contingent upon the success of the action. Under the facts just stated, Mr. Colburn's testimony was properly received.

In *Swingley v. Daniels*, 123 Wash. 409, 212 Pac. 729,

it is definitely held that an attorney appearing in the case for one of the parties who had made no arrangement concerning attorney's fees, had no agreement for a contingent fee or any interest in the property to be acquired, and intended to charge only a reasonable fee, which would probably be more if successful than if not so, was not disqualified from testifying under Rem. Rev. Stat., § 1211, above mentioned.

■ The next question is whether Harley, at the time he was discharged in October, 1940, had substantially performed the contract.

The appellant contends that Harley had not lived up to his contract, in that he neglected the farm, the house, and Mrs. Hilbert, and for this reason Mrs. Hilbert was justified in discharging him. In this connection, reliance is placed upon the case of *Gardner v. Frederick,* 96 Wash. 324, 165 Pac. 85, where it is held that, if an aged person contracts with another to convey property to that other in consideration of future support and care, and there is a wilful and wrongful withholding of such support and care, the contract may be rescinded.

We find no support in the evidence in this case to the effect that Harley wilfully or wrongfully failed to perform the services which he was obligated to perform under the contract. There are two outstanding, significant facts in this case. One is, that Harley was discharged twice, each time shortly or immediately after the Olsons came upon the scene. The other is, that there is no evidence in this case, except that of Mrs. Olson, to the effect that Mrs. Hilbert ever complained to any of her friends and neighbors, with some of whom she undoubtedly talked freely, with reference to Harley's not performing his duties as he should. There is testimony by several of the witnesses that Mrs. Hilbert had repeatedly said that she

had a better time after Harley came than she had ever had in her life, because he took her on automobile trips, to shows, and to other places.

At the time Harley was discharged the second time, he had worked practically four years upon the farm and had received no compensation. His earnings, as well as the income from the farm, went into the expenses necessary for the support and maintenance of himself and Mrs. Hilbert. Taking into consideration the date that Mrs. Hilbert died, the contract, at the time of Harley's discharge, had been approximately ninety-five per cent performed.

In *State ex rel. Union Savings & Loan Ass'n v. Superior Court,* 176 Wash. 482, 30 P. (2d) 231, it was said:

"While specific performance may properly be decreed in favor of a plaintiff who has been guilty of a minor breach of a contract, such relief will not be decreed where the plaintiff has committed a material breach of the contract, unless refusal of the decree would effectuate an unjust penalty or forfeiture. American Law Institute Restatement of the Law of Contracts, Vol. A, § 375."

Assuming now that, during about a year previous to the time Harley was discharged, he had not performed his duties under the contract in such a manner as he was obligated to do, and the further fact that Mrs. Hilbert had made no complaint with reference to him, except to Mrs. Olson, as she testified, which occurred in July, 1940, we are of the view that Harley had substantially performed his contract at the time he was discharged, and that, if it can be said that he had breached the contract, it was only of a minor character. To now deny him the enforcement of his contract would impose upon him a very great injustice. We think this case falls within the rule stated in the case last cited.

The appellant makes two other contentions: One is, that Harley is estopped because, at the time Mrs. Hilbert told him to leave, he did not state to her or to the Olsons that he expected to rely upon his contract; and the other, that Olson had made a settlement with him at the time, having given him a certain sum of money, and this operated as a settlement of all obligations, including the previous contract. With reference to these contentions, it is sufficient to say that we find no substantial merit in either one of them.

The judgment will be affirmed.

ROBINSON, C. J., STEINERT, SIMPSON, and DRIVER, JJ., concur.