[No. 33995. Department One. April 25, 1957.]

EDWIN OLSSON, *Respondent,* v. ARNOLD HANSEN *et al.,*
*Appellants.*[1]

[1]Reported in 310 P. (2d) 251.

*Lenihan & Ivers*, for appellants.

*Medley & Haugland* and *Dale E. Sherrow*, for respondent.

OTT, J.—Edwin Olsson was the registered owner of the "Misty Isles," a gillnet fishing boat. September 27 or 28, 1954, he moored the boat at Fishermen's Terminal, operated by the port of Seattle.

Desiring to sell the boat, Olsson contacted Jack A. Flagler, a marine broker, with offices in the Fishermen's Terminal building. A written brokerage contract was entered into between Olsson and Flagler. In addition to the written contract, there was an alleged oral agreement between Flagler and Olsson by which Flagler was to help Olsson look after the boat and keep the bilge water pumped out. A key to the boat was delivered to Flagler, and he placed upon it his "for sale" sign.

Olsson's sale price for the boat was four thousand dollars net to him. Flagler advertised the boat for forty-five hundred dollars. Frank Hansen was shown the boat on April 1, 1955, by an employee of Flagler. Upon returning to the office, he was informed by Flagler that the sale price was forty-five hundred dollars. He offered forty-two hundred dollars, and the counteroffer was acceptable to Flagler, conditioned upon approval of the owner. Thereafter, Frank contacted his brother Arnold and obtained a check for one hundred dollars, which he gave to Flagler as earnest money on behalf of himself and his brother. Both of the Hansens understood that this reduction in price to forty-two hundred dollars was subject to the approval of the owner, Edwin Olsson.

The prospective purchasers desired an operating demonstration of the boat. Neither Flagler nor any of his employees was familiar with its operation. Flagler arranged for a demonstration on April 3, 1955, when the mechanism and operation of the boat were demonstrated by Olsson.

There is a conflict as to the conversation of Olsson, the

Hansens, and Flagler at the meeting on the boat. To show his ownership of the boat, Olsson handed to Frank Hansen his coast guard certificate, which Frank Hansen inspected and returned to Olsson. Frank Hansen contends that he told Olsson at that time that he had paid one hundred dollars to Flagler, and that he would get the certificate when he obtained the rest of the money and made final arrangements with Flagler. Olsson denied any knowledge of the one-hundred-dollar earnest-money payment or that there was any conversation to the effect that the certificate would be delivered upon payment of the balance of the money to Flagler. There was a further conflict as to whether Flagler's "for sale" sign was on the boat at the time of the inspection and demonstration.

April 14, 1955, the Hansens paid to Flagler forty-one hundred dollars, for which they received an unacknowledged document, written upon a business letterhead, purporting to be a bill of sale for the "Misty Isles," signed by "Jack Flagler, broker for owner." The alleged bill of sale was also a receipt for the money.

Flagler gave the key to the boat to the Hansens, together with a new padlock, which they immediately installed on the boat, taking possession thereof. Flagler absconded with the entire forty-two hundred dollars.

When the Hansens desired to change the coast guard registration of the "Misty Isles," Olsson refused to surrender the certificate or to give them a bill of sale, for the reason that he had never been paid for the boat.

This action, in the nature of a replevin suit, was instituted by Olsson against the Hansens, alleging his ownership of the "Misty Isles," his right to possession thereof, and the illegal possession of Frank and Arnold Hansen.

The pleadings presented one question: Was Flagler Olsson's agent, with authority to receive the purchase price of the boat?

The cause was tried to the court, which determined that no such agency had been established by the evidence. Judgment was entered restoring possession of the "Misty Isles" to Olsson or, in the alternative, providing that Olsson

recover from the Hansens its value in the sum of four thousand dollars. In addition, Olsson was allowed damages in the sum of two hundred sixty dollars for detention of the boat. The Hansens have appealed.

 The burden of establishing the authority of an agent rests upon the one who asserts it. *O'Daniel v. Streeby,* 77 Wash. 414, 137 Pac. 1025 (1914); *Ross v. Johnson,* 171 Wash. 658, 19 P. (2d) 101 (1933). Olsson's testimony was that the express agreement with Flagler was for a period of thirty days from September 27 or 28, 1954, at which time the listing expired, and that the written agreement extended only to finding a prospective purchaser. The written agreement had been destroyed. The effect of the destruction of this document goes only to the weight to be given to the testimony. *Walker v. Herke,* 20 Wn. (2d) 239, 147 P. (2d) 255 (1944).

The appellants admit they knew Olsson was the owner of the boat, but testified that Olsson was present when the statement was made that one hundred dollars had been paid to Flagler; that title was to be delivered when the rest of the money was paid to Flagler, and that, therefore, there was a ratification by the owner of Flagler's authority to receive the money. This testimony was denied by Olsson.

 The trial court, in the exercise of its discretion, believed the testimony of Olsson, and found that Flagler was without actual or apparent authority to receive the purchase price or to deliver title. Where a court makes findings of fact based upon conflicting evidence, those findings will be sustained unless this court can determine, from the record, that the evidence preponderates against them. *Irwin v. Sanders,* 49 Wn. (2d) 600, 304 P. (2d) 697 (1956). In the instant case, the evidence does not preponderate against the trial court's findings.

 Appellants further contend that the broker, having the only key and having actual possession of personal property, had apparent authority to deliver possession and title. This contention is not supported by the evidence. Actual possession was at all times in Olsson, who arranged for the moorage and paid the charges. The evidence did

not establish that the broker had actual possession of the boat.

Assuming, *arguendo*, that the key left with Flagler was the only key, would such fact establish sufficient apparent authority to merit the payment of the entire purchase price to the person possessing the only key, when such purchaser admitted actual knowledge of ownership in another?

■ Facts and circumstances are sufficient to establish apparent authority only when (1) a person exercising ordinary prudence, acting in good faith, and conversant with business practices and customs, would be misled thereby, and (2) such person has given due regard to such other circumstances as would cause a person of ordinary prudence to make further inquiry. *Largent v. Ritchey*, 38 Wn. (2d) 856, 233 P. (2d) 1019 (1951).

■ One conversant with business practices relating to the usual authority of a broker would not assume that a broker was vested with authority to receive the purchase price and deliver title, unless such authority was expressly shown. See *Largent v. Ritchey, supra.*

Under the facts of this case, the rule requires that the purchaser make further inquiry. What inquiry was made by the appellants? The record indicates that the appellants had ample opportunity to make inquiry of the owner as to the actual authority of the broker, but none was made. Appellants knew that the authority of Flagler was limited, and that their counteroffer reducing the price was subject to the owner's approval. The record shows that the money was paid before the owner's approval was obtained. Appellants placed significance upon the coast guard certificate as evidence of title, and yet parted with the purchase price without receiving a signed transfer of the certificate.

■ Appellants' reliance upon the broker's possession of the key as indicative of his authority to receive payment and deliver title (when considered with the other facts and circumstances) does not meet the test of conduct of a

reasonably prudent man. Appellants failed to establish either apparent or actual authority.

The judgment is affirmed.

HILL, C. J., MALLERY, SCHWELLENBACH, and FINLEY, JJ., concur.

[1]Reported in 310 P. (2d) 233.