[No. 877-1.    Division One—Panel 1.    September 11, 1972.]

INLAND-RYERSON CONSTRUCTION PRODUCTS COMPANY, INC., *Appellant,* v. BRAZIER CONSTRUCTION CO., INC., *et al.,* *Respondents and Cross-appellants.*

*Merrick, Hofstedt & Lindsey* and *Gary R. Eliasen,* for appellant.

*DeGarmo, Leedy, Oles & Morrison* and *Seth W. Morrison,* for respondents and cross-appellants.

CALLOW, J.—This action arose as a result of the building of Interlake High School by Bellevue School District No. 405. The participants in the transaction with which we are concerned are:

a) Inland-Ryerson Construction Products Company, Inc., plaintiff-appellant, the subcontractor.

b) Brazier Construction Co., Inc., the defendant-respondent and cross-appellant, the contractor.

c) United Pacific Insurance Company, respondent and cross-appellant, surety on the contractor's performance bond.

d) David Brazier, the president of Brazier Construction Co., Inc., and his estate, defendant-appellant.

The parties will be referred to as the subcontractor, the contractor, the surety and David Brazier or his estate.

The subcontractor filed a complaint for breach of contract and for lien foreclosure against the contractor and the surety, and they filed a counterclaim and amended answer which alleged that the subcontractor had released its claim against the contractor and was, therefore, estopped from asserting liability against the surety and the bond. Following trial, judgment was entered in favor of the subcontractor against the contractor and the estate in the sum of $62,380; and the surety was dismissed.

On May 9, 1966, the contractor entered into a contract with the school district for the construction of the high school. The contractor arranged with the surety for a public works bond in the sum of $3,046,066.10, the bond being executed pursuant to RCW 39.08. The subcontractor sup-

plied labor and material and by April 1968, claimed $91,890.19 was due (approximately $29,000 of the amount was disputed by the contractor) and on or about April 17, 1968, filed a lien against the retainage fund held by the school district pursuant to RCW 60.28.010. At the time of the filing of the lien claim notice with the school district, the project was almost completed and $176,384.91 of the earned retainage was being withheld.

Finding of fact No. 7, as corrected by the court, stated:

## VII.

That a copy of the lien notice was received by United Pacific on or about April 17, 1968 and was referred to the Bostik-Monarch [sic] Insurance Agency for investigation. Subsequent to the receipt of the notice, Mr. Bostik [sic] of the insurance agency acting on behalf of Mr. Brazier and United Pacific Insurance Company went to the office of the plaintiff's attorney, Jerry Schumm, and made inquiry concerning the matters. He thereafter suggested a negotiation meeting between Mr. Schumm and Mr. Brazier, and such suggestion was for the benefit of Mr. Brazier and Brazier Construction, and not for or in behalf of United Pacific Insurance Co.

When the lien had been filed, a meeting was held in May 1968 between David Brazier and the attorney and representatives of the subcontractor. It was agreed that if the lien against the retainage fund was released the contractor would pay approximately $19,000 to the subcontractor immediately and the balance of $62,380 when the retainage fund was released by the school district. The approximate $19,000 was paid, and the lien was released by a letter dated June 4, 1968, to the school district which stated, in part, that a lien had been filed for work performed by the subcontractor for the contractor, as principal, and that the United Pacific Insurance Company was the surety,

which had the bond relative to this work for Brazier. At this time, we wish to release the lien which we filed on said date relative to the Brazier Construction Co., Inc. and United Pacific Insurance Company. We have reached a settlement with Mr. Brazier regarding the back-charges and monies held by his company.

The surety did not receive a copy of the lien release but was advised by Mr. Bostick, of the insurance agency that acted on behalf of Mr. Brazier and the surety, that the difficulties had been resolved and the lien released. When the retainage fund was released by the school district to the contractor in August 1968, there were no liens filed against the project. The contractor did not pay the $62,380 balance due when the fund was received.

David Brazier died March 27, 1969. The contractor went out of business, and the claim filed by the subcontractor against the estate for $62,380 was denied. Finding of fact No. 12 of the trial court stated:

## XII.

That if the plaintiff had not released its claim against the contract retainage fund being held by Bellevue School District #405, it would have been paid in full from this fund and any contingent liability of United Pacific Insurance Company on the account would have been extinguished. That the plaintiff prejudiced the position of United Pacific Insurance Company by voluntarily releasing its security interest in this fund, as a result of which release, the plaintiff's account was not paid. That United Pacific Insurance Company neither waived its right to rely upon the release, nor agreed that the release was not applicable to both the bond claim and the claim against the retainage. That the release of the bond notice claim was equivalent to the failure to give notice as required by R.C.W. 39.08.030 and no other notice of claim was given by the plaintiff prior to or within 30 days from acceptance of the project.

The subcontractor assigns as error the dismissal of the surety, and the finding that the subcontractor prejudiced the surety's position by releasing its interest in the retainage fund. The subcontractor further objects to the finding that Mr. Bostick was not an agent of the surety when he arranged the meeting to negotiate the lien dispute and in finding that the subcontractor was estopped from asserting any claim against the bond after the lien was released. It is the contention of the subcontractor that Bostick was the

surety's agent in the release negotiations and arrangement; and, therefore, the surety is not released, that the surety should be liable on its bond regardless of the lien release since it was a party to the release and that since the consideration to be performed by the contractor was never paid, the release should be rescinded.

Two applicable statutes are set forth for reference. RCW 39.08.030 reads in part as follows:

The bond mentioned in RCW 39.08.010 shall be in an amount equal to the full contract price agreed to be paid for such work or improvement, and shall be to the state of Washington, except in cases of cities and towns, in which cases such municipalities may by general ordinance fix and determine the amount of such bond and to whom such bond shall run: *Provided,* The same shall not be for a less amount than twenty-five percent of the contract price of any such improvement, and may designate that the same shall be payable to such city, and not to the state of Washington, and all such persons mentioned in RCW 39.08.010 shall have a right of action in his, her, or their own name or names on such bond for work done by such laborers or mechanics, and for materials furnished or provisions and goods supplied and furnished in the prosecution of such work, or the making of such improvements: *Provided,* That such persons shall not have any right of action on such bond for any sum whatever, unless within thirty days from and after the completion of the contract with an acceptance of the work by the affirmative action of the board, . . . or other public body, . . . the laborer, mechanic or subcontractor, or materialman, or person claiming to have supplied materials, provisions or goods for the prosecution of such work, or the making of such improvement, shall present to and file with such board, . . . or other public body, . . . a notice in writing in substance as follows:

and RCW 60.28.010 reads in part:

(1) Contracts for public improvements or work, . . . by the . . . board, or other public body, herein referred to as "public body", shall provide, and there shall be reserved by the public body from the moneys earned by the contractor on estimates during the

progress of the improvement or work, a sum equal to ten percent of the first one hundred thousand dollars and five percent for all amounts over one hundred thousand dollars of such estimates, said sum to be retained by the . . . board, or other public body, as a trust fund for the protection and payment of any person or persons, mechanic, subcontractor or materialman who shall perform any labor upon such contract or the doing of said work, and all persons who shall supply such person or persons or subcontractors with provisions and supplies for the carrying on of such work, . . . Every person performing labor or furnishing supplies toward the completion of said improvement or work shall have a lien upon said moneys so reserved: *Provided,* That such notice of the lien of such claimant shall be given in the manner and within the time provided in RCW 39.08.030 through 39.08.060 as now existing and in accordance with any amendments that may hereafter be made thereto: *Provided further,* That the board, . . . or other public body, at any time after fifty percent of the original contract work has been completed, if it finds that satisfactory progress is being made, may make any of the partial payments subsequently made in full; but in no event shall the amount to be retained be reduced to less than five percent of the amount of the entire contract.

The findings of fact of the trial court are supported by substantial evidence and will not be overturned.

The argument of the parties centers around the release of the retainage. *Restatement of Security* § 132 (1941), reads:

Where the creditor has security from the principal and knows of the surety's obligation, the surety's obligation is reduced pro tanto if the creditor
(a) surrenders or releases the security, or
(b) wilfully or negligently harms it, or
(c) fails to take reasonable action to preserve its value at a time when the surety does not have an opportunity to take such action.

A surety has an interest in the security held for performance by his principal. This was recognized in *Fidelity & Deposit Co. v. Herbert H. Conway, Inc.,* 14 Wn.2d 551, 567, 128 P.2d 764 (1942), where we find:

That the surety does have some interest in this fund cannot be denied. The fund has been held to be not only a trust fund for claimants, but also as security for the surety. We have held that, if the reserve fund is paid out by a city or a government agency prior to the expiration of the thirty day period in which claims against it may be filed, the surety is entitled to recover against the agency for the loss which it suffers as a result of the premature payment. *U.S. Fidelity & Guaranty Co. v. Montesano,* 160 Wash. 565, 295 Pac. 934.

When a subcontractor consents to the surrender and release of security (here its lien against the retainage fund), the value of this asset which might otherwise be used to satisfy the claim against the contractor-principal is lost; and the surety is not able to resort to its right of subrogation if called upon to perform. *See Stubbs Elec. Co. v. Longview School Dist. 112,* 153 Wash. 33, 279 P. 86 (1929). The surety is thereby prejudiced, its legal right impaired and it is excused. In *John Dower Lumber Co. v. New Amsterdam Cas. Co.,* 152 Wash. 186, 192, 277 P. 696 (1929), a supplier was granted recovery on the bond entered into between the contractor as principal and the surety. The supplier had filed a claim with the municipal corporation, given notice to the surety, and then had consented to the municipal corporation paying the contractor in part. The court held that the surety was not prejudiced thereby but said that if a legal right of the surety was impaired by the making of the payment, then the surety would be excused pro tanto:

We have several times held, under varying circumstances, that payments made to a contractor upon a construction contract must work prejudice, in some form, to the surety upon the bond given for the benefit of laborers and materialmen before such surety will be heard to complain of the making of such payment.

(Citations omitted.)

The surety is consequently entitled to a reduction in his obligation to the extent of the value of the lost security. *New Amsterdam Cas. Co. v. F. Redondo & Co.,* 158 S.W.2d 334 (Tex. Civ. App. 1942); L. Simpson, *Suretyship* § 74 (1950).

From A. Stearns, *Suretyship* § 6.46 (J. Elder 5th ed. 1951), it is clear that *Restatement of Security* § 132 (1941), applies to a situation where a creditor-subcontractor voluntarily releases security. Stearns says at page 185:

This rule of discharge is applicable to sureties on negotiable instruments. It also finds common application in building contracts. Thus, where the beneficiary of a contractor's indemnity bond by some voluntary act dissipates the security which protects the surety on the bond, the latter will be exonerated.

(Footnotes omitted.)

The rule is based on the right of the surety to be subrogated to all means of payment; and if that is impaired by an agreement between the contractor and the subcontractor, he is released to the extent that his security is lost. *Chicago Bridge & Iron v. Reliance Ins. Co.,* 46 Ill. 2d 522, 264 N.E.2d 134 (1970); *Boyd v. Royal Indem. Co.,* 126 Ohio St. 322, 185 N.E. 422 (1933); *State v. Hartford Accident & Indem. Co.,* 140 Wash. 278, 248 P. 432 (1926); 50 Am. Jur *Suretyship* § 109 (1944).

In *Electro-Kold Sales Corp. v. General Cas. Co. of America,* 174 Wash. 555, 25 P.2d 572 (1933), urged as imparting liability to the surety there was a specific agreement in the bond that any alteration would not release the principal or the surety from liability. There is no such agreement before us in this action.

■■ The scope of authority of the insurance broker, Mr. Bostick, to act for or bind the security in negotiations concerning release of funds to the contractor is in question. The evidence is that he was required to submit all contractor's bonds to the surety for underwriting approval. Further, the evidence is that when the company received notice of the filing of the lien claim by the subcontractor it sent a copy of the notice to Bostick requesting him to make inquiry into the situation. There was no grant of authority to negotiate for or to waive rights of the surety and indeed there is no evidence that Mr. Bostick did either. An insurance broker usually acts as agent of the insured. W. Vance,

*Insurance* § 78, p. 443 (B. Anderson 3d ed. 1951). The duty is on the claimant to establish authority in the broker to act as agent for the surety. *Olsson v. Hansen,* 50 Wn.2d 199, 310 P.2d 251 (1957). The contractor and subcontractor were in dispute over certain differences and set-offs which occupied their negotiations. The negotiations resulted in the promise of the subcontractor to release the lien and of David Brazier to pay the subcontractor the $19,000 forthwith and a balance of $62,380 when the retainage fund was released. These mutual promises provided the consideration essential to the release agreement. The negotiations and the resultant agreement were not participated in or consented by the surety. Notice of the agreement to the surety was irrelevant. The baby had already been thrown out with the bath water. Following the execution of the release, the surety relied upon the agreement between the principal and the subcontractor; and the retainage fund was released by the school district. Thereafter, the contractor did not pay the subcontractor and months passed. The surety may not now seek recovery from the disbursed retainage. The subcontractor is estopped from looking to the surety in such a situation. *Leonard v. Washington Employers, Inc.,* 77 Wn.2d 271, 461 P.2d 538 (1969); *Arnold v. Melani,* 75 Wn.2d 143, 449 P.2d 800 (1968-69).

The estate of David Brazier cross-appealed from the judgment in favor of the subcontractor against the estate. The estate claims that the trial court erred in permitting the attorney for the deceased to testify to the meeting attended by the representatives of the subcontractor, the attorney and the deceased, in which it was agreed the lien would be released, $19,000 paid forthwith and $62,380 paid when the retainage fund was received by the contractor. The estate also claims error in the imposition of liability on the estate for the unpaid balance.

RCW 5.60.030 forbids a party-in-interest testifying in his own behalf as to a transaction with a deceased person. This restriction, in and of itself, does not preclude an attorney from testifying to such a transaction unless he

does have an interest in the outcome. Unless his fee is contingent upon success, it is the rule in this state that he does not have an interest under the statute and may testify to the transaction. *Carey v. Powell,* 32 Wn.2d 761, 204 P.2d 193 (1949); *In re Estate of Hilbert,* 14 Wn.2d 475, 128 P.2d 647 (1942).

■ We think that the action of the trial court of imposing personal liability on the estate of David Brazier was appropriate under the circumstances of this case. The agreement of David Brazier as found by the trial court was a personal undertaking. A corporate officer may assume as a personal liability a debt of his corporation. In 3 W. Fletcher, *Private Corporations* § 1119, at 755 (M. Wolf ed. 1965), we find:

> Of course, a corporate officer may make himself personally liable on a corporate contract or for a corporate debt by an express agreement, provided the agreement is supported by a valuable consideration. . . . Moreover, the officers and stockholders of a corporation who give their personal obligation for the payment of a debt of the corporation and thus secure time on the debt cannot maintain that their promise to pay the debt is without consideration. But in order to bind corporate officers by an agreement on their part to be answerable for the debts of the corporation, it is not necessary that a consideration should have moved to them personally; their agreement to be answerable for the advances made to it followed by the advances actually made to their principal is sufficient to fix liability. . . .
>
> . . . Thus, an officer may make himself personally liable on a corporate contract by guaranteeing its performance, if such appears to have been the intention of the parties, but not otherwise, and provided no fraud or accident appears.

(Footnotes omitted.)

■ The trial court was of the opinion that the retainage funds received by David Brazier from the school district were in the nature of trust funds held for the purpose of paying the subcontractor, that failure to pay from those funds pursuant to his agreement constituted a conversion

of the funds, and that both the corporation and David Brazier, personally, were liable for payment. We concur in that conclusion and are supported by *Maynard Inv. Co. v. McCann*, 77 Wn.2d 616, 465 P.2d 657 (1970), which imposed such a responsibility in order that the purpose of the lien statutes would not be subverted. *See also Smaby v. Shrauger*, 9 Wn.2d 691, 115 P.2d 967 (1941); *Dodson v. Economy Equip. Co.*, 188 Wash. 340, 62 P.2d 708 (1936). The trial court found the oral promise of David Brazier to see to the application of the retainage fund to the payment of the balance of the debt was in fact made. The statute of frauds was not pleaded, insofar as the record discloses, and no other defense was raised. The finding of the trial court is supported by the record, and the debt is enforceable against David Brazier as a personal obligation and responsibility he assumed when he solicited the relinquishment of these funds into his hands and trust. *See Michael Distrib. Co. v. Tobin*, 225 Cal. App. 2d 655, 37 Cal. Rptr. 518 (1964); *Flick v. Salloum*, 163 So. 2d 143 (La. App. 1964); *King v. John A. Denies Sons Co.*, 56 Tenn. App. 39, 404 S.W.2d 580 (1966); Annot., 35 A.L.R.2d 906 (1954).

The judgment is affirmed.

HOROWITZ, C.J., and WILLIAMS, J., concur.