[No. 24502. Department One. October 3, 1933.]

ELECTRO-KOLD SALES CORPORATION *et al., Respondents,*
v. GENERAL CASUALTY COMPANY OF AMERICA *et al.,*
*Appellants,* E. Y. JEFFREY, *Respondent and*
*Cross-Appellant.*

GEORGE DODGSON, *Respondent,* v. GENERAL CASUALTY
COMPANY OF AMERICA, *Appellant.*[1]

[1]Reported in 25 P. (2d) 572.

*Ralph S. Pierce* and *Edwin J. Cummins,* for appellant.

*Battle, Hulbert & Helsell, Joseph E. Gandy, Scott & Simmons, Meier & Meagher, Ronald W. Meier, Wright & Wright, Felix Rea, Kennedy & Schramm, Evert F. Arnold, Dykeman, Monheimer & Griffin, Ballard & Houghton, Horace W. Hall,* and *Cyril D. Hill,* for respondents.

*John Kelleher,* for respondent and cross-appellant.

Mitchell, J.—This action was brought by the Electro-Kold Sales Corporation and two others, as plaintiffs, against the Dixonian Apartment Company, a corporation, and E. Y. Jeffrey, as receiver of the Dixonian Apartment Company, J. R. Delvendahl Company, General Casualty Company of America, a corporation, and various firms and persons who filed notices of liens against the property involved. .

H. L. Dixon was the owner of a lot in Seattle, upon which it was desired to construct an apartment house. Negotiations were had with the J. R. Delvendahl Co., as contractor· and builder, the stock of which was owned by Delvendahl and his wife, for the purpose of constructing the building. Arrangements were made by which Delvendahl, Dixon and one Uphus organized a corporation called the Dixonian Apartment Company, of which Delvendahl became president and principal stockholder. Dixon and wife conveyed the lot to the Dixonian Apartment Company. Plans for the building were prepared by an architect, who is one

of the parties to this action, and a contract for the construction of the building was entered into by and between the Dixonian Apartment Company and J. R. Delvendahl Co.

The building contract provided generally that the contractor should furnish all labor and material for the building, and equip the same with refrigerator, ranges, beds, etc.; that the owner had obtained a $28,000 construction mortgage, the proceeds of which were assigned to the contractor; that no changes should be made in the work without the consent of the architect; that the building should be completed within five months, unless prevented by events beyond the control of the contractor or by the fault of the owner; that the owner agreed to pay the contractor forty thousand dollars on the following terms:

"(a) The owner, by this instrument, herewith assigns all proceeds over and above the cost thereof of one certain $28,000 first mortgage placed through the Securities Mortgage Company, to the contractor. The same shall be payable according to arrangements to be made between the contractor and the said mortgage company.

"(b) The owner shall deliver to the contractor, on demand, after work is commenced, $12,000 worth of par value preferred stock, in such denominations as the contractor may stipulate. The said stock shall be preferred as to 8% annual dividend and further preferred to the extent that 90% of the net earnings of the said apartment house shall apply toward a retirement of the same;"

and in the concluding paragraph it was provided:

"Sixth: The contractor further agrees to furnish the owner a Contractor's Performance Bond guaranteeing the performance of the within contract."

The bond given was termed "The Standard Form of Bond." It was executed in consideration of a premium of six hundred dollars, or, as the testimony

showed, one and one-half per cent on the building contract price of forty thousand dollars. As the bond and a note attached to and made a part of the bond are important in the consideration of this case, we set them out, or pertinent portions of them, as follows:

"KNOW ALL MEN: That we J. R. Delvendahl Co. of Seattle, Washington, hereinafter called the Principal, and General Casualty Company of America, a Washington corporation hereinafter called the Surety or Sureties, are held and firmly bound unto Dixonian Apartment Company, of Seattle, Washington, hereinafter called the Owner, in the sum of Forty Thousand and No/100 ($40,000) for the payment whereof the Principal and the Surety or Sureties bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly, by these presents.

"WHEREAS, the Principal has, by means of a written agreement dated September 20, 1930, entered into a contract with the Owner for erection of an apartment house on the South fifty feet of Lot 9, Block 14, Renton Addition to the City of Seattle, according to plans and specifications, a copy of which Agreement is by reference made a part hereof;

"Now, THEREFORE, the condition of this Obligation is such that, if the Principal shall faithfully perform the Contract on his part and shall fully indemnify and save harmless the Owner from all cost and damage which he may suffer by reason of failure so to do and shall fully reimburse and repay the Owner all outlay and expense which the owner may incur in making good any such default,

"AND FURTHER, that if the Principal *shall pay all persons who have contracts directly with the Principal for labor or materials, failing which such persons shall have a direct right of action against the Principal and Surety under this Obligation,* subject to the Owner's priority,

"then this Obligation shall be null and void, otherwise it shall remain in full force and effect.

"PROVIDED, however, that no suit, action or proceeding by reason of any default whatever shall be

brought on this Bond after two years from the day on which the final payment under the contract falls due.

"AND PROVIDED, That any alterations which may be made in the terms of the Contract, or in the work to be done under it, or the giving by the Owner of any extension of time for the performance of the Contract, or any other forbearance on the part of either the Owner or the Principal to the other shall not in any way release the Principal and the Surety or Sureties, or either or any of them, their heirs, executors, administrators, successors or assigns from their liability hereunder, notice to the Surety or Sureties of any such alteration, extension or forbearance being hereby waived;"

and

"NOTE: The attention of Owners and Architects is called to the provisions of the above paragraph beginning, 'and further.' This clause gives direct right of suit against the Surety to all subcontractors and materialmen having direct contracts with the Contractor, and will generally involve the Owner in an added premium." (Italics ours.)

While the building was being constructed, the contractor ran into financial difficulties that resulted in a voluntary assignment for the benefit of his creditors. Later, E. Y. Jeffrey was appointed and qualified as receiver of the Dixonian Apartment Company.

Among other relief sought by the complaint and cross-complaints were direct money judgments against the surety, General Casualty Company of America, in the several amounts of the liens, attorney's fees and fees for the preparation and filing of notices of liens. Upon issues presented by the pleadings, the trial resulted in judgments in favor of the lien claimants, against the surety, for their respective accounts, with interest, attorney's fees and costs of preparing and filing lien notices, and also a foreclosure in similar

amounts against the building and lot. Some special features entered into the claims of respondent George Dodgson and Jeffrey, the receiver, that will be given separate consideration.

The surety has appealed from all the judgments as entered. Jeffrey, the receiver, has cross-appealed, claiming that the relief granted him was inadequate.

Some questions of pleading arose before and at the trial which, in our opinion, require no separate consideration, because of the conclusions we reach on the merits.

There are eleven assignments of error, upon which appellant's arguments are rather general as to the merits. There was testimony that, in procuring the bond, it was represented to the surety that responsible subcontractors, who would furnish labor and material, had subscribed for ten thousand dollars of preferred stock in the corporation having the work done, which would be used to that extent in payment of the cost of construction. None of the twelve thousand dollars of preferred stock mentioned in the building contract to go to the contractor was issued, nor was any issued or delivered to those subcontractors performing services and furnishing material who, appellant claims, had agreed to take preferred stock in part payment for their accounts, in the total sum of $5,415. Now, as we understand appellant's contention, it is that the failure to issue twelve thousand dollars of the preferred stock to the contractor, so that he could use it to pay the subcontractors, constituted an alteration of the contract to the extent that the appellant became relieved of all obligations as a surety.

However, and in the first place, if it be assumed there was an alteration in the contract, which need not be decided, nevertheless J. R. Delvendahl Co., the contractor, and the surety, in their bond to the

Dixonian Apartment Company, specifically agreed, among other things, that any alteration in the terms of the contract or work to be done under it should not in any way release the principal and the surety, or either of them, from liability under the bond, and that notice of any alteration was waived. Again, it is clear that the reference in the contract to the issuance of preferred stock to the amount of twelve thousand dollars to the contractor was not taken seriously as affecting the appellant's liability, because, as its agent who sold the bond testified, the premium of six hundred dollars was reckoned at the rate of one and one-half per cent on the total building contract price of forty thousand dollars, which was the usual rate for that kind of bond. Still further, so far as the subcontractors are concerned, none of them was promised any stock, and reference thereto found in only some of the contracts amounted to nothing more, as the trial court properly held, than an option to the contractor to make part payment that way, which was not done.

Beyond these considerations, the appellant agreed in the bond that, if the principal, J. R. Delvendahl Co., the contractor, did not pay the subcontractors, they might "have a direct right of action against the surety." Certainly these actions are not beyond the scope of that agreement. Not content with making that promise once, it was repeated in the "note," as follows:

"The attention of owners and architects is called to the provision of the above paragraph beginning, 'and further.' This clause gives a direct right of suit against the surety to all subcontractors and materialmen having direct contracts with the contractor . . ."

Appellant prepared the bond, and, of course, the provision in the "note" expressed its construction and understanding of the contract.

These clauses and agreements removed the case from the rule announced in *Forsyth v. New York Indemnity Co.*, 159 Wash. 318, 293 Pac. 284, and supporting cases therein cited, relied on here by the appellant. In those cases the bonds were purely indemnity bonds in favor of the owner, and contained no promise to or for the benefit of a third party giving him a direct right of action. Also, in addition to the effectiveness of this direct promise, of itself, of a direct right of action in favor of those to whom the primary obligor in the bond became indebted on account of the enterprise with reference to which the bond was executed, the case is brought within the principle and rule announced in *Union Machinery & Supply Co. v. Darnell*, 89 Wash. 226, 154 Pac. 183, as follows:

"It is also well settled that, in such a case, the third person may sue the first directly upon the promise as one made for his benefit. *Nordby v. Winsor, supra* [24 Wash. 535, 64 Pac. 726]; *Johnson v. Shuey*, 40 Wash. 22, 82 Pac. 123."

Also, see *Kelly v. Greenough*, 9 Wash. 659, 38 Pac. 158; *Roberts v. Security Trust & Savings Bank*, 196 Cal. 557, 238 Pac. 673; *Guilford Lumber Mfg. Co. v. Johnson*, 177 N. C. 44, 97 S. E. 732.

Appellant further objects to the allowance against it of reasonable attorney's fees and reasonable charges for preparing and recording the notices of liens. However, the right to maintain a direct action against the surety was not given by the surety on condition that the claimant waive his right of action against another personally liable, or against the property improved. Therefore, the claimant may sue both at the same time, as was done in this action.

Rem. Rev. Stat., § 1141, says that

" . . . personal judgment may be rendered in an action brought to foreclose a lien, against *any*

*party* personally liable for any debt for which the lien is claimed . . . The court may allow, as part of the costs of the action, the moneys paid for filing or recording the claim, and a reasonable attorney's fee in the superior and supreme courts.'' (Italics ours.)

The appellant, by its contract, became personally liable for the debts for which the liens are claimed and the statute fixes as a part of the costs certain items, viz.: moneys paid for filing or recording the claims and reasonable attorney's fees.

In each instance where a lien has been established in this case, there has been allowed an attorney's fee as authorized by the statute; but in all or nearly all of such liens a certain stated amount has been allowed ''for the *preparation* and recording of its lien,'' which stated amount includes the amount paid for filing or recording the claim of lien, and also five dollars for the *preparation* of it. There is no right to include anything as costs in this respect beyond the terms of the statute. The statute does not warrant anything whatever for *preparation* of the claim of lien for filing, so that each separate judgment, to the extent it includes five dollars or any other amount for preparing the claim for filing or recording, is excessive, and direction is hereby given that it be modified accordingly.

The next assignment is that the court erred in awarding judgment in favor of George Dodgson against the appellant in the sum of $305. The amount allowed was for lath furnished and used in the building. The point urged upon the assignment is that the lath was supplied at the request of one Wilson, a subcontractor under the main contractor, and not within the terms of the primary contract, because it was not furnished at the request of the main contractor, that Dodgson did not file any lien, and that

there is no liability against the appellant on its performance bond.

However, the theory of the Dodgson action, which was consolidated with the others for trial, was that the original contractor agreed, as a primary and original undertaking, to pay for the lath, and that appellant became liable thereby. The trial court found, upon a clear preponderance of the evidence,

" . . . that, after Dodgson furnished the material, and prior to the expiration of the time for filing notice of lien therefor, upon his threat to file such lien, the contractor, J. R. Delvendahl Co., promised and agreed to pay the account of plaintiff Dodgson in the total amount of $305."

The consideration for the promise, of course, was the agreement of Dodgson not to file any lien, and thus add to the cost of carrying out the contract for which J. R. Delvendahl Co. was responsible. Dodgson, relying on that promise, did not file any lien, and thereafter demanded payment of the contractor, but no payment was ever made in any amount. The contract to pay $305 for the material thus became the direct obligation of the principal in the bond, and falls within its terms, that, if the principal, J. R. Delvendahl Co., fails to pay persons having contracts with it for labor and material, such persons shall have a direct right of action against the principal and surety.

It is further assigned that the court erred in giving Jeffrey, as receiver of the Dixonian Apartment Company, a judgment against the surety company in the sum of $1,709.17 and interest, as damages for failure of the contractor, in substantial particulars, to complete the building according to the terms of the contract. The right to judgment in the amount allowed was well supported by a preponderance of conflicting evidence upon the subject.

On the cross-appeal of Jeffrey, as receiver, it is assigned that the amount allowed as damages for failure of the contractor to substantially comply with the terms of the contract is inadequate. There was conflict in the evidence as to the several items and amounts of damages covered by the liability of the surety company, which evidence we are not able to say, upon an examination of it, preponderates against the findings of the trial court.

Another assignment is that the court erred in failing to provide in the judgment that the receiver have relief against the surety company on account of judgment liens against the property in favor of laborers, materialmen and subcontractors in the total amount of their claims, as found by the trial court, slightly in excess of twelve thousand dollars. The judgment gives each of such creditors a lien against the property involved, and a personal judgment against the surety company. The judgment should provide, however, and directions are hereby given that it be modified so as to provide, that, to the extent, if any, such particular judgment liens are satisfied out of the property, the Dixonian Apartment Company, or its successor in interest, as owner of the property, shall have judgment over against the surety company.

The cause is remanded, with directions to the lower court to modify the judgment with respect to each appeal as above indicated.

BEALS, C. J., HOLCOMB, MILLARD, and STEINERT, JJ., concur.