[No. 7789–6–III.   Division Three.   July 16, 1987.]

THE TRANE COMPANY, ET AL, *Respondents,* v. BROWN–
JOHNSTON, INC., ET AL, *Defendants,* ISC
SYSTEMS CORPORATION, ET AL,
*Appellants.*

512

*Diamond & Sylvester,* by *Sheri L. Flies* and *F. Douglas Ruud,* for appellants.

*Hatch & Leslie,* by *John R. Rizzardi,* for respondent Trane Co.

*Thomas Theisen* and *Williams, Lanza, Kastner & Gibbs,* for respondent Grinnell Fire Protection Services.

GREEN, J.—Summary judgment was entered in favor of The Trane Company and Grinnell Fire Protection Services foreclosing their construction liens against ISC Systems Corporation and Baugh Industrial Contractors, Inc. ISC and Baugh appeal.

The dispositive issue is whether an issue of material fact exists as to Trane's and Grinnell's knowledge there was more than one contract between ISC, the property owner, and Baugh, the general contractor, so as to require them to file two claims of lien.

During 1981–82 ISC began to develop a plan for a manufacturing and warehousing complex at its Liberty Lake property. The complex was to be built in phases. On September 7, 1982, ISC entered into a written contract with Baugh, a general contractor, for the phase one construction of the *manufacturing* building. Baugh subcontracted the mechanical work to Brown–Johnston. Brown–Johnston in turn subcontracted the heating and air conditioning system (HVAC) to Trane and the fire protection work to Grinnell.

Phase one construction began in May 1983 and was substantially completed in February 1984.

On June 30, 1983, Baugh and ISC entered into a written contract for construction of the phase two warehouse building. Baugh advised ISC it would be more economical if the major subcontractors for phase one were used to perform the phase two work, which they did. Baugh paid Brown–Johnston for work completed, but Brown–Johnston went bankrupt and failed to pay Grinnell and Trane.

On August 16, 1983, Trane sent ISC a notice of intent to lien for materials supplied to that date. On March 27, 1984, Trane sent a notice of intent to lien for materials not included in the prior notices. Subsequently, Trane filed a lien. Grinnell also sent a notice of intent to lien and later filed it. Both parties, Grinnell and Trane, brought this action to foreclose their liens and both moved for summary judgment. The motions were granted and they were awarded their attorney fees and costs. ISC and Baugh appeal.

Summary judgment is appropriate if the pleadings, depositions and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Del Guzzi Constr. Co. v. Global Northwest Ltd.*, 105 Wn.2d 878, 882, 719 P.2d 120 (1986). On review of a summary judgment, the appellate court places itself in the position of the trial court and assumes facts most favorable to the nonmoving party. *Del Guzzi*, at 882. The burden is on the moving party to prove no genuine issue of fact exists which could influence the outcome at trial. *Hartley v. State*, 103 Wn.2d 768, 774, 698 P.2d 77 (1985). While generally a question of fact is properly left to the trier of fact, when reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law. *Hartley*, at 775. The nonmoving party is given the benefit of any factual doubt when a summary judgment is made. *Hartley*, at 777. Of course, after the moving party has established a prima facie case, the non-

moving party must set forth specific facts which sufficiently rebut the moving party's contention and disclose a genuine issue as to a material fact; the nonmoving party cannot merely claim contrary facts nor rely on speculation, argumentative assertions that unreasonable factual issues remain "or on affidavits considered at face value." *Meyer v. UW,* 105 Wn.2d 847, 852, 719 P.2d 98 (1986). With these principles in mind, we turn to the statutes governing the liens at issue in this case.

■ ■ RCW 60.04.020 provides in pertinent part:

Every person, firm or corporation furnishing materials or supplies . . . to be used in the construction . . . of any . . . building . . . shall give to the owner or reputed owner of the property . . . a notice in writing, which notice shall cover the material, supplies or equipment furnished . . . during the sixty days preceding the giving of such notice as well as all subsequent materials, supplies or equipment furnished . . . No materialmen's lien shall be enforced unless the provisions of this section have been complied with . . .

RCW 60.04.060 provides:

No lien created by this chapter shall exist, and no action to enforce the same shall be maintained, unless within ninety days from the date . . . of the cessation of the performance of such labor, the furnishing of such materials, or the supplying of such equipment, a claim for such lien shall be filed for record as hereinafter provided, . . .

Since labor and materialmen's liens are creatures of statute and are in derogation of common law, they must be strictly construed. *Dean v. McFarland,* 81 Wn.2d 215, 219–20, 500 P.2d 1244, 74 A.L.R.3d 378 (1972); *Wells v. Scott,* 75 Wn.2d 922, 925, 454 P.2d 378 (1969). Generally, after a contract is completed, the time for filing a claim of lien cannot be extended or the right revived by furnishing material or performing labor upon a new contract and tacking the same to the original contract. *Boise Cascade Corp. v. Pence,* 64 Wn.2d 798, 801, 394 P.2d 359 (1964); *Anderson v. Taylor,* 55 Wn.2d 215, 217, 347 P.2d 536, 78

A.L.R.2d 1161 (1959) (quoting *Swensson v. Carlton*, 17 Wn.2d 396, 405, 135 P.2d 450 (1943)). However, where the lien claimant is not a party to either contract because either he furnished material or labor to a contractor who has two or more contracts with an owner, or to a subcontractor who has two or more subcontracts in connection with the same project, the general rule is not applicable, *unless* the lien claimant was aware of the fact there were two or more contracts. *Anderson,* at 217; *Standard Lumber Co. v. Fields,* 29 Wn.2d 327, 338, 187 P.2d 283, 175 A.L.R. 309 (1947). The burden is then on the owner who is claiming there were two or more contracts to prove the lien claimant had actual or constructive notice of the two or more contracts. *Anderson,* at 217; *Standard Lumber,* at 338–39.

*Standard Lumber* is on point with the instant case. There, the lien claimant, Standard, was a subcontractor which supplied building materials to the general contractor, Berry, for the construction of a grain elevator, bunkhouse, and shop building, all located on the owner's property. Berry had two different construction contracts with the owner for these three structures. When Standard was not paid for the materials supplied to the project, it filed a materialmen's lien and brought a foreclosure action. The owner defended on the ground there were two contracts between the owner and the general contractor, that the subcontractor lien claimant did not file its lien in time for the materials on the first contract, and no notice of delivery had been given to the owner for materials used under the second contract. The court held that neither the sequence in ordering materials nor the fact that three buildings were constructed put the subcontractor on inquiry to determine whether there was more than one contract between the owner and general contractor. *Standard Lumber,* at 339. The court also pointed out the buildings were constructed on a single tract of land for a common purpose, deliveries of materials were at frequent intervals, and the owner made nine payments through the general contractor. *Standard Lumber,* at 340. The court held that under such circum-

stances, the burden shifted to the owner to show the lien claimant had either actual or constructive notice there were two separate contracts between the owner and the general contractor.[1] *Standard Lumber,* at 339. The court pointed out that constructive notice could be established by showing (1) a lapse of time between the construction of each structure; (2) cessation of work on each structure; (3) occupation of the building and premises by the owner; and (4) settlement of accounts.

Thus, the only issue to be resolved is whether Trane and Grinnell knew there were two contracts between ISC, the owner, and Baugh, the general contractor. ISC and Baugh contend there are several material questions of fact on this issue.

### ACTUAL KNOWLEDGE

1. ISC points to the deposition of the president of Brown–Johnston, Mr. Munger, in which he stated he informed representatives of Trane and Grinnell there were separate contracts for each phase. However, in a later deposition, Mr. Munger clarified this statement, stating he was referring to the two contracts between Grinnell and Brown–Johnston, and Trane and Brown–Johnston, not the critical two contracts between ISC and Baugh.

2. ISC cites to the testimony of Trane's representative, Mr. Dawson, where he acknowledged Trane received a separate purchase order for each phase and viewed the separate purchase orders as separate contracts. Mr. Dawson's deposition actually states he treated the purchase orders as the separate contracts between Trane and Brown–Johnston, but did not know there was more than one contract between ISC and Baugh.

---

[1] *Wavetek Ind., Inc. v. K.H. Gatewood Steel Co.,* 458 N.E.2d 265 (Ind. Ct. App. 1984), relied upon by ISC and Baugh, is factually distinguishable and not applicable in light of the Washington statutes and *Standard Lumber. Wavetek* considered the critical contract to be between the general contractor and the subcontractor, whereas *Standard Lumber* holds the critical contract to be between the owner and the general contractor. Furthermore, *Wavetek* involved a no–lien provision; there is none here.

3. ISC also contends that because Trane sent ISC two notices of intent to lien, Trane was aware the ISC project was being constructed under more than one contract. However, Trane's representative explained the two notices of intent to lien were sent because two purchase orders were received from Brown–Johnston, which did not necessitate the filing of two liens.

4. ISC asserts Grinnell had actual knowledge of the two contracts between ISC and Baugh because Grinnell received a letter of intent from Brown–Johnston for each phase of the project, and both letters indicated a purchase order would be issued as soon as Brown–Johnston received a contract from the architect and owner or from Baugh. As to these letters, Grinnell points out: (a) letters of intent are not contracts; (b) the language of the letters does not imply there were two separate contracts between ISC and Baugh; and (c) the letter of intent to Grinnell for phase two was issued by Brown–Johnston more than 4 months after Baugh and ISC had signed the contract for phase two.

5. ISC also claims the fact Grinnell set up a separate invoicing system for each phase of the project indicates Grinnell had knowledge of the two contracts between ISC and Baugh. Grinnell explains it had a separate invoicing system because Brown–Johnston requested separate invoices in order to facilitate its internal cost accounting procedures; and it is not uncommon for separate invoices to be used for different parts of the same contract.

CONSTRUCTIVE KNOWLEDGE

ISC claims Trane and Grinnell had constructive notice of the two contracts because Brown–Johnston issued different job numbers for each phase; separate building permits were issued and posted for each building; the custom and standard practice in the industry is that the owner in a phased project enters into separate contracts for construction of each phase and Trane and Grinnell as experienced contractors should have known this; each phase had specifications and were bid separately; the buildings were designed and

constructed to be separate and independent; and phase two was the only additional work not required by the phase one contract for which Grinnell requested an internal contract number.

Trane and Grinnell rebut these allegations with the following: Brown–Johnston routinely issued a new job number for each contract *and* each change order and did not regularly use its job numbers when communicating with Grinnell. Separate building permits are not indicative of separate contracts between the owner and general contractor as the Uniform Building Code for Spokane County requires separate permits when two buildings are not connected at the roof line. There is no evidence Grinnell was aware of customary practices between owners and general contractors regarding phased projects as Grinnell is a specialty contractor. Grinnell had five extras or change orders to its original contract, which included phase two work. Grinnell's invoices describe the phase two work as "extra work order No. 2". Constructive knowledge of the two contracts cannot be implied from the fact separate specifications and bids were made on the two phases because Grinnell gave Brown–Johnston separate price quotations *for each of the five change orders* involved in the ISC project. Trane did not know the relationship between the designation phase one and two and the buildings located at the ISC complex. The different job numbers were meaningless to Trane because the materials were being shipped to the same project at the same address over the same period of time. Phasing of construction on large projects is a common occurrence and did not give the two lien claimants notice of the number of contracts between ISC and Baugh. Furthermore, Brown–Johnston's knowledge of the two contracts between ISC and Baugh cannot be imputed to the lien claimants. Site preparation for the two buildings took place at the same time. Trane continued to supply phase one with materials at the same time as it supplied phase two with materials. The number of purchase orders issued by Brown–Johnston is irrelevant to the number of contracts

between ISC and Baugh as Trane received more than two purchase orders.

The evidence produced by Trane and Grinnell is not controverted by ISC and Baugh. Based upon these overwhelming uncontroverted facts, the court did not err in holding Trane and Grinnell had no knowledge, either actual or constructive, of two separate contracts between ISC and Baugh. Thus, no material issue of fact exists and the trial court properly granted summary judgment.

Second, ISC claims the court erred in ruling ISC was required to file a notice of termination pursuant to RCW 60.04.064. We find no merit to this claim. The court did not rule ISC was required to file a notice of termination; rather, it merely pointed out that one way ISC could have established Grinnell and Trane had actual or constructive knowledge of the two contracts would have been by filing a termination notice on each building as it was completed.

■ Third, ISC and Baugh contend RCW 60.04.130 limits recovery of attorney fees to part of the costs of the action and here a good portion of Grinnell and Trane's attorney fees were expended prior to filing foreclosure actions and were incurred in negotiating forbearance agreements with Baugh and ISC.

RCW 60.04.130 provides in pertinent part:

> The court may allow to the prevailing party in the action, whether plaintiff or defendant, as part of the costs of the action, the moneys paid for filing or recording the claim, and a reasonable attorney's fee in the superior court, court of appeals, and supreme court.

The decision as to whether to award attorney fees pursuant to RCW 60.04.130 is discretionary with the court. *Walsh Servs., Inc. v. Feek,* 45 Wn.2d 289, 274 P.2d 117 (1954); *Modern Builders, Inc. v. Manke,* 27 Wn. App. 86, 96, 615 P.2d 1332 (1980). Since costs and attorney fees are not recoverable at common law and are allowable only as the statute provides, a lien claimant prior to the bringing of an action to foreclose has no right to demand attorney fees for preparation of the notice of lien, *Generaux v. Petit,* 172

520

Wash. 132, 135–36, 19 P.2d 911 (1933), and "[t]he statute does not warrant anything whatever for preparation of the claim of lien for filing . . ." (Italics omitted.) *Electro–Kold Sales Corp. v. General Cas. Co. of Am.*, 174 Wash. 555, 563, 25 P.2d 572 (1933).

A portion of the fees requested by both Grinnell and Trane were incurred prior to the filing of the lien foreclosure action and represented negotiation of forbearance agreements with ISC and Baugh in settlement of a portion of the claims. Grinnell and Trane do not dispute this fact. Thus, we are constrained to find the court erred in awarding Trane and Grinnell attorney fees incurred prior to the filing of their lien foreclosure actions.

Also, the court erred in basing its award of attorney fees to Grinnell on the terms of a contract to which ISC and Baugh were not parties. One who is not a party to a contract can neither enforce its provisions nor be bound by them.

Finally, we do not consider ISC and Baugh's contention Grinnell should be required to allocate the portion of its lien attributable to labor and to show how it applied the payment received. They have failed to cite authority in support of their contention as required by RAP 10.3(a)(5); *Smith v. King*, 106 Wn.2d 443, 451, 722 P.2d 796 (1986).

Affirmed in part; reversed and remanded for redetermination of attorney fees awarded by the trial court and for determination of reasonable attorney fees to be awarded The Trane Company and Grinnell Fire Protection Services on appeal.

McINTURFF, C.J., and GROSSE, J., concur.

After modification, further reconsideration denied August 28, 1987.