FILED
COURT OF APPEALS
DIVISION II

2014 NOV 18 AM 10: 05

STATE OF WASHINGTON

BY_____
        DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| KEVIN DOLAN, and a class of similarly situated individuals, | No. 44982-0-II |
| Plaintiffs/Respondents, | |
| v. | |
| KING COUNTY, a political subdivision of the State of Washington, | |
| Defendant/Respondent, | UNPUBLISHED OPINION |
| STATE OF WASHINGTON, DEPARTMENT OF RETIREMENT SYSTEMS, | |
| Appellants. | |

WORSWICK, P.J. — It is axiomatic that an entity cannot be bound by a contract to which it is not a party except under very limited circumstances. *Jones v. Matson*, 4 Wn.2d 659, 670, 104 P.2d 591 (1940); *Trane Co. v. Brown-Johnston, Inc.*, 48 Wn. App. 511, 520, 739 P.2d 737 (1987). In this case, the trial court ruled that the Department of Retirement Systems (DRS), was bound to a settlement agreement between Kevin Dolan, as representative of a "Class" of public defenders, and King County. Because DRS was not a party to this contract, it cannot be bound by its terms.

DRS appeals two superior court orders entered in a settled class action lawsuit between Kevin Dolan, as representative of a Class of public defenders, and King County. First, DRS appeals the final approval order, which contains findings, conclusions, and rulings approving a settlement between the Class and the County. Second, DRS appeals the order granting DRS only partial intervention.

DRS argues that (1) the Administrative Procedure Act[1] (APA) removed the superior court's original subject matter jurisdiction to enter orders affecting PERS (Public Employees Retirement System), and that the superior court erred by (2) ruling that its final approval order binds DRS, who was not a party to the settlement and (3) denying DRS's motion to intervene as a "full party," on grounds that DRS's motion to intervene was untimely. Because the superior court erred by ruling that a party is bound to a contract to which it is not a party, we reverse the final approval order. Because the superior court erred by basing its partial intervention order on the erroneous legal conclusion that DRS's motion to intervene was untimely, we reverse the partial intervention order. We remand for further proceedings consistent with this opinion.

## FACTS

A. *Initial Trial and Our Supreme Court's Review*

In 2006, a class of public defenders represented by Kevin Dolan sued King County, alleging that the County wrongfully failed to enroll the Class members in PERS, a retirement program administered by DRS. Following a bench trial, the superior court ruled that the Class members were "employees" entitled to enrollment in PERS. *Dolan v. King County*, 172 Wn.2d 299, 301, 258 P.3d 20 (2011).

---

[1] Chapter 34.05 RCW

2

The County petitioned our Supreme Court for direct review of the superior court's ruling. *See Dolan*, 172 Wn.2d at 310. In 2011, our Supreme Court granted review, affirmed, and remanded the case to the superior court to resolve the remedy issues:

> [T]he [class members] are "employees" under RCW 41.40.010(12) and are entitled to be enrolled in the PERS. *We affirm the [superior] court and remand to that court for further proceedings regarding remedies.*

*Dolan*, 172 Wn.2d at 301 (emphasis added).

B. *DRS's Amicus Curiae Request*

In March of 2012, following our Supreme Court's remand, DRS sent a letter to the superior court requesting to become *amicus curiae* for the remainder of the proceedings:

> [DRS] is not a party to this case and does not seek to protect the interests of either plaintiffs or defendants. It wishes, instead, to serve as *amicus* in the truest form of that concept, to counsel the court as a friend. We believe that the current parties have differing interests and loyalties than [DRS], and do not have the background or expertise to identify tax and PERS eligibility related issues for the court.

Clerk's Papers (CP) at 287-89 (footnote omitted). The Class objected to DRS's letter requesting amicus curiae status. On April 4, 2012, following the Class's objection, DRS sent a letter to the parties stating its intent to abandon its request to become amicus curiae:

> [W]e understand that the parties are discussing the possibility of settlement negotiations and, as a result, have agreed not to brief and argue any substantive issues in the case except for, possibly, the statute of limitations issue.
>
> Because none of the substantive issues are scheduled for briefing and argument, it appears that there is no current role for [DRS] to educate the court regarding retirement issues implicated by the parties' litigation. However, [DRS] would like to note that it is available to serve as a resource to <u>both</u> sides in settlement discussions.
>
> [DRS] has a continuing concern that any settlement agreement be consistent with the law. [DRS] has a statutory duty to make determinations regarding membership and benefit eligibility, and to decide any other retirement issues for any employee reported to [DRS] as a member of a [DRS]-administered retirement system. Any

settlement negotiated between the parties must conform to the law. Otherwise, the settlement agreement may result in further litigation regarding retirement eligibility for members of the class; hence, [DRS's] offer to work with both sides.

CP at 112-13.

C.     *Settlement Between the Class and the County*

On December 18, 2012, the Class and the County filed a stipulation announcing that they had reached a tentative settlement. Under the settlement, the County would make retroactive payments to PERS on behalf of the County (as employer) and the Class members (as employees) from the date that the County should have enrolled the Class members. The settlement granted the Class members retroactive benefit eligibility and service credits in PERS from the date that the County should have enrolled the Class members in PERS.

DRS was not a party to and had no involvement in the settlement. But DRS received a copy of the settlement agreement, which contained provisions granting DRS the right to object to the settlement at the reasonableness hearing, where the superior court would hear objections and approve the settlement only if it found the settlement to be "fair, adequate, and reasonable." *See Pickett v. Holland Am. Line-Westours, Inc.*, 145 Wn.2d 178, 188, 35 P.3d 351 (2001). The settlement also purported to give DRS a right to appeal any order approving the settlement.

On March 29, 2013, prior to the reasonableness hearing, the Class and the County moved for preliminary approval of the settlement.[2] DRS responded with a motion to shorten time and a motion to present its "amicus curiae" position. CP at 96. DRS's motions requested that the

---

[2]A preliminary approval is a preliminary ruling which approves the form of the class notice and the method of providing notice to the settlement class, sets deadlines for the filing of objections, and sets the final settlement hearing date. *See* CR 23(c); *Aguirre v. AT&T Wireless Servs.*, 109 Wn. App. 80, 83-84, 33 P.3d 1110 (2001).

superior court wait to give preliminary approval to the settlement until it was modified to address DRS's concerns. On the same day, the superior court denied DRS's two motions and gave preliminary approval to the settlement. Also on the same day, DRS notified the superior court that it intended to file a motion to intervene.

D.     *DRS's Motion To Intervene*

On April 22, 2013, DRS moved for mandatory intervention under CR 24(a)(2). DRS's motion to intervene requested allowance to intervene as a "full party," such that its approval of the settlement would be required before the superior court could approve the settlement. DRS's motion to intervene came before a trial to determine remedy. In fact, because the Class and the County had been in settlement discussions, the trial court had not set any date for that remedy trial.

While the Class and the County did not oppose allowing DRS to intervene to object to the settlement's approval, they did object to DRS intervening as a "full party" with the ability to be a party to the settlement, whose approval is necessary for there to be a binding agreement. The superior court entered an order granting DRS only partial intervention, based on the superior court's legal conclusion that DRS's motion to intervene was untimely:

> DRS's request to participate in this case as a "full party" is untimely. In addition, allowing DRS to intervene as a "full party" at this stage of the litigation would also unduly complicate and delay the proceedings, and would greatly prejudice the parties. This action has been stayed as to all matters other than those related to the consideration of the proposed settlement and objections thereto and to the implementation of the settlement if it is approved.

> DRS's request for "full party" status is denied.

> The parties do not object to limited intervention by DRS to have its objections, already filed, heard by the Court and then appeal if the Court approves

the settlement and DRS wishes to appeal. Indeed, the parties intended that the Settlement Agreement already confers this limited intervention.

The Court grants DRS limited intervention to have the DRS objections to the settlement already filed heard by the Court and to appeal if the Court approves the settlement and DRS wishes to appeal. The Court finds this limited intervention for DRS is sufficient to protect the interests DRS has articulated in its motion and its objection.

. . . .

*DRS will be subject to this Court's orders, if any, requiring the implementation of the Settlement Agreement, if the settlement is approved.*

CP at 312-13 (emphasis added). The superior court elaborated on its reasoning in its oral ruling:

DRS has a right of intervention, and I think it's under Civil Rule 24(a). I think they have a right to intervene because certainly the issues that are addressed in this settlement document directly affect DRS. The implementation and follow through with the agreement that's been reached in terms of coverage and those *details intimately involve* [DRS].

*But I can't find it to be a timely intervention,* especially for purposes of arguing a CR [2A] type we-didn't-sign-so-we're-not-bound-by-it. I think that the minimum time to have intervened if you were going to argue as far as a CR [2A] type status that if we don't sign, we're not bound, would have been immediately after the Supreme Court decision was announced. Because at that point in time, the Supreme Court had upheld my decision that they had a right to a pension, and [DRS] would have been put on notice that [DRS] would automatically be involved in determining those details.

Verbatim Report of Proceedings (VRP) (May 10, 2013) at 34 (emphasis added). Thus, the superior court determined both that for DRS to have filed a timely motion to intervene, DRS would have had to have filed the motion "immediately after" the Supreme Court decision was announced, and that because DRS's motion to intervene was untimely, it could intervene only partially.

E.     *Reasonableness Hearing and Entry of Final Approval Order*

At the reasonableness hearing, DRS had an opportunity to argue its substantive objections to the settlement, which we summarize as follows:

1. The settlement calculated the dollar amount of retroactive contributions that would be paid to PERS without DRS's approval, which is contrary to statutes stating that DRS must determine the amount of retroactive contributions.

2. The settlement prohibited DRS from charging interest on retroactive contributions owed to PERS, which DRS claimed would cost PERS over $90 million in interest payments.

3. The settlement required DRS to pay the Class's $12 million attorney fee obligation, from either the County's retroactive contributions to PERS or the PERS trust fund, to later be reimbursed by each Class member individually, either by DRS garnishing the Class member's PERS benefits at retirement, or by the Class member paying DRS directly. This scheme violates RCW 41.40.052 (antialienation statute), may violate Treas. Reg. §1.401-1 (as amended in 1976) or federal law, and fails to adequately ensure that DRS will actually recover the $12 million in attorney fees.

4. The settlement required the County to pay the Class's members' retroactive "employee" contributions without the Class reimbursing the County. This conflicts with RCW 41.40.042 and RCW 41.50.140(3).

5. The settlement contains provisions governing the determination of the Class members' retroactive service credits and benefit eligibility, contrary to many statutory and regulatory provisions. *See generally*, RCW 41.40.023-.057; chapters 415-02 and 415-108 WAC.

6. The settlement prevents the Class members from choosing between PERS 2 and PERS 3, despite the law mandating that employees receive that choice. RCW 41.40.785, 795.

7. The settlement prevents DRS from following the law in administering the pensions in many other ways.

8. The settlement is not fair, reasonable, or adequate for the other PERS members, who would be penalized by the settlement's terms.

9. The settlement places large information technology and administrative costs on DRS.

10. The settlement does not contain any provisions to shield DRS from liability resulting from enforcing the settlement, despite its many illegal provisions.[3]

The superior court approved the settlement over DRS's objections. At a later proceeding, the superior court entered a final approval order that contained findings, conclusions, and rulings approving the settlement and rejecting DRS's objections in detail. The final approval order contained the following rulings adverse to DRS:

> King County shall pay class counsel the $12 million common fund attorney fee from the employee PERS contributions that King County is making for the class members.
>
> . . . .
>
> DRS shall provide the class members with service credit and retirement benefits as provided in the *Dolan* decision by the Supreme Court and the Settlement Agreement. DRS shall assist the parties and the Court in implementing the

---

[3] The Class and the County devote much briefing to arguing that the superior court correctly approved the settlement as "fair, adequate, and reasonable," challenging DRS's *substantive* objections to the settlement and the superior court's final approval order. Br. of Resp't (County) at 32 (responding to those substantive arguments). Because DRS did not raise these issues on appeal, and did not receive a full opportunity to litigate these issues below, we do not address them.

> Settlement Agreement. . . . DRS shall not charge interest on the PERS contributions required by the Settlement Agreement.
>
> . . . .
>
> *The parties, including the limited intervenor DRS, are subject to and shall comply with the Court's orders, including these concerning implementation of the Settlement Agreement.*

CP at 514-15 (emphasis added). Recognizing DRS's necessary involvement in executing the settlement, the final approval order contained the following instructions should we reverse it:

> If this order is reversed on appeal and the reversal becomes final . . . the Settlement Agreement shall, without notice, be automatically terminated. In the event of termination, the [Class] and King County shall jointly request the Court to set a status conference to schedule further proceedings.

CP at 515. DRS appeals both the final approval order and the partial intervention order.

## ANALYSIS

### I. SUPERIOR COURT JURISDICTION

As a threshold issue, DRS argues that the superior court exceeded its original subject matter jurisdiction by entering its final approval order because RCW 34.05.510 of the APA removed the superior court's original jurisdiction over PERS administration. We disagree.

We review the superior court's interpretation of a statute de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). If a statute's meaning is plain on its face, this court must follow that plain meaning. *Dep't of Ecology*, 146 Wn.2d at 9-10. A statute's plain meaning is discerned from the language's ordinary meaning, the statute's context, related provisions, and the statutory scheme as a whole. *Udall v. T.D. Escrow Servs., Inc.*, 159 Wn.2d 903, 909, 154 P.3d 882 (2007).

We also review de novo whether the superior court has subject matter jurisdiction. *Bour v. Johnson*, 80 Wn. App. 643, 647, 910 P.2d 548 (1996). Subject matter jurisdiction is the authority to hear and determine the type of action to which a case belongs. 80 Wn. App. at 647. "The superior courts have broad and comprehensive original jurisdiction over all claims which are not within the *exclusive jurisdiction of another court*." *Orwick v. City of Seattle*, 103 Wn.2d 249, 251, 692 P.2d 793 (1984) (emphasis added).

RCW 34.05.510 states that the APA "establishes the exclusive means of judicial review of agency action" with limited exceptions inapplicable here. RCW 34.05.010(3) defines "agency action":

> [L]icensing, the implementation or enforcement of a statute, the adoption or application of an agency rule or order, the imposition of sanctions, or the granting or withholding of benefits.

RCW 34.05.510 limits the superior court's ability to exercise its original jurisdiction on a claim challenging an "agency action." *See Wells Fargo Bank, N.A. v. Dep't of Revenue*, 166 Wn. App. 342, 360, 271 P.3d 268 (2012), *review denied*, 175 Wn.2d 1009 (2012). But the plain meaning of RCW 34.05.510's language renders the statute inapplicable in a situation where no *specific* "agency action" is being challenged.[4] *See Wells Fargo Bank, N.A.*, 166 Wn. App. at 360.

This case concerns the final approval order approving a settlement between the Class and the County and a partial intervention order, not a challenge to an "agency action" of DRS. Because this case does not concern a challenge to agency action, RCW 34.05.510 has not vested

---

[4] Similarly, RCW 41.40.068, which requires "[a]ny person aggrieved by any decision of [DRS]" to file a claim with the director of DRS before appealing to the superior court, applies only where an agency has made a *decision* that a litigant then appeals.

jurisdiction over this case exclusively in some other court, and thus has not removed the superior court's original subject matter jurisdiction to hear this case.[5]

## II. RULING THAT THE FINAL APPROVAL ORDER BINDS DRS

DRS argues that the superior court erred by entering a ruling in the final approval order binding DRS to the final approval order because DRS was not a party to the settlement. We agree.[6]

The superior court ruled that "the limited intervenor DRS, [is] subject to and shall comply with the Court's orders, including these concerning implementation of the Settlement." CP at 515. This is a conclusion of law reviewed de novo. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002).

Settlements are contracts. *Evans & Son, Inc. v. City of Yakima*, 136 Wn. App. 471, 477, 149 P.3d 691 (2006). Thus, "[s]ettlements are considered under the common law of contracts." *Condon v. Condon*, 177 Wn.2d 150, 162, 298 P.3d 86 (2013). As noted above, it is axiomatic that an entity cannot be bound by a contract to which it is not a party except under very limited circumstances. *Jones*, 4 Wn.2d at 670; *Trane*, 48 Wn. App. at 520.

Here, all the parties agree that DRS was not a party to the settlement, and cannot be bound by the settlement agreement. But the superior court ruled that while DRS was not bound

---

[5] The Class and the County argue that the Supreme Court affirmatively gave the superior court jurisdiction by remanding "to that court for further proceedings regarding remedies." *See Dolan*, 172 Wn.2d at 301. We do not address this argument because the superior court had jurisdiction to hear this case.

[6] The Class and the County argue that DRS can be bound to the findings and conclusions as a *partial* intervenor, but cite no authority to support this argument. Thus, we do not consider it. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

by the *settlement agreement*, DRS was bound by the *final approval order* approving that settlement. This is a distinction without a difference.

Here, an agreement to which DRS was not a party required DRS (and by extension other members of PERS) to incur arguably millions of dollars in unpaid interest and costs. Binding DRS to the order approving a settlement is equivalent to binding DRS to that settlement, and is contrary to contract law. *See generally Green v. City of Wenatchee*, 148 Wn. App. 351, 363, 368, 199 P.3d 1029 (2009) (holding, although as a matter of collateral estoppel rather than contract law, that stipulated judgments, findings and conclusions based on a settlement cannot bind third parties who did not participate in those stipulations).

Thus, because DRS was not a party to the settlement, the trial court could not force DRS to be bound to the settlement by its order approving the settlement. The superior court's order is erroneous as a matter of law.

### III. PARTIAL INTERVENTION

DRS argues that the superior court abused its discretion by entering its partial intervention order based on its legal conclusion that DRS's motion to intervene was untimely. We agree.

The trial court properly determined that DRS had a right to intervene stating, "[T]he issues that are addressed in this settlement document directly affect DRS. The implementation and follow through with the agreement that's been reached in terms of coverage and those details intimately involve [DRS]." VRP (May 10, 2013) at 34. Neither the Class nor the County contests that DRS had an intervention of right. Thus, we examine only whether the superior

court abused its discretion by basing its partial intervention order on the legal conclusion that

DRS's motion to intervene was untimely.

CR 24(a) states:

Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

We review a superior court's decision to grant or deny a motion to intervene on grounds of

timeliness, as well as its decision to limit the scope of intervention generally, for an abuse of

discretion. *Kreidler v. Eikenberry*, 111 Wn.2d 828, 832, 766 P.2d 438 (1989); *see Marino Prop.*

*Co. v. Port Comm'rs of the Port of Seattle*, 97 Wn.2d 307, 316, 644 P.2d 1181 (1982). A

superior court abuses its discretion where either no reasonable person would adopt the superior

court's position, or the superior court based its ruling on an erroneous legal conclusion.

*Kreidler*, 111 Wn.2d at 832; *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122

Wn.2d 299, 339, 858 P.2d 1054 (1993).

Washington law clearly states that if a party files a motion to intervene prior to the

commencement of trial, that motion is timely. *Am. Disc. Corp. v. Saratoga W. Inc.*, 81 Wn.2d

34, 43, 499 P.2d 869 (1972). But post-judgment, the superior court should allow a motion to

intervene "only upon a strong showing after considering all circumstances, including prior

notice, prejudice to the other parties, and reasons for and length of the delay." *Kreidler*, 111

Wn.2d at 833.

Here, the motion to intervene was filed after the trial and judgment on liability, but before

the trial on remedy. But the trial and judgment on liability, i.e., whether the County should have

13

enrolled the public defenders in PERS, had no effect on DRS's interests. Conversely, the trial on remedy, *how* to enroll the public defenders in PERS and make retroactive PERS payments on their behalf, did affect DRS's interests.

The trial court ruled that DRS's motion to intervene was untimely because the "minimum time" for DRS to have intervened would have been "immediately after" the announcement of the Supreme Court decision that affirmed the trial court's liability decision. VRP (May 10, 2013) at 34. But DRS filed its motion to intervene before the trial that affected its interests. At the time of DRS's motion, the trial court had not even set a trial date on these issues. Thus, DRS's motion to intervene was timely as a matter of law. *Am. Disc. Corp.*, 81 Wn.2d at 43.

By concluding that DRS's motion to intervene was untimely, the superior court reached an erroneous legal conclusion. Because the superior court based its partial intervention order on this erroneous legal conclusion, the partial intervention order constitutes an abuse of discretion.[7,8] *Wash. State Physicians*, 122 Wn.2d at 339.

We reverse the superior court's ruling that DRS is bound to the final approval order. Because the final approval order's viability rests on the ruling binding DRS to it, we reverse the

---

[7] DRS also argues that the superior court erred as a matter of law by concluding that CR 24(a) allowed DRS to intervene from the date our Supreme Court remanded the case to resolve the remedy issues. We do not consider this issue because it does not affect the result that the superior court abused its discretion by ordering that DRS could not intervene as a full party on timeliness grounds.

[8] By this ruling, we do not mean to imply that should DRS intervene in this proceeding, such intervention would allow the trial court to bind DRS to a settlement to which it is not a party.

final approval order in its entirety.[9] *Esmieu v. Schrag*, 15 Wn. App. 260, 266, 548 P.2d 581 (1976), *aff'd*, 88 Wn.2d 490 (1977). Finally, because DRS's motion to intervene was timely, we reverse the partial intervention order. We remand for further proceedings consistent with this opinion.[10]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Maxa, J.

_____
Lee, J.

---

[9] DRS argues that binding it to the settlement agreement violates CR 2A and RCW 2.44.010. We do not address these issues, and instead resolve this case under the common law of contracts.

[10] DRS argues that the superior court erred in its final approval order by entering findings and conclusions that reached ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute. Because we reverse the final approval order on other grounds, we do not consider this argument.